* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk is Royal Sun Alliance.
4. The average weekly wage is $758.15, yielding a compensation rate of $505.45.
5. The date of the injury is August 18, 2002.
6. Stipulated Exhibit Number 2 consists of the Industrial Commission forms filed in this matter.
7. Stipulated Exhibit Number 3 consists of the medical records regarding plaintiff.
8. The parties participated in a mediated settlement conference on June 27, 2005. Defendants have paid the entire mediation fee in the amount of $437.50. Pursuant to Rule7(c) of the Rules For Mediated Settlement And Neutral Evaluation Conferences Of The North Carolina Industrial Commission, defendants are entitled to a credit in the amount of $218.75 for payment of plaintiff's share of the mediation costs, and defendants may withhold funds from any award for this purpose.
9. Temporary total disability benefits were paid to plaintiff from August 26, 2002 to September 1, 2002 and from June 13, 2003 to October 2, 2003. Temporary partial disability benefits were paid to plaintiff from October 6, 2003 to May 18, 2004. The total amount of indemnity paid to date is $18,366.45.
 * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-two year old male, who had completed the 12th grade of high school, and has been employed by the defendant-employer for over 17 years and as a roller grind operator since May 2002.
2. A roller grind operator runs a line consisting of different passes, grinding rollers to a thin tolerance, changing blades and retooling in order to grind the tapered rollers that go inside bearings. The operator is responsible for changing blades in the machine, changing the grinding and regulating wheels, changing the tape, banding the boxes of rollers and preparing the boxes for shipment. These duties require bending and lifting objects. Defendant-employer encourages teamwork amongst the roller grind operators. If workers need assistance, they are encouraged to ask their co-workers, who are willing to help. When a co-worker is absent, the team members are expected to cover the lines. Assistance is available from co-workers for those who are physically unable to perform any aspect of the job.
3. On August 18, 2002, plaintiff sustained a compensable injury by accident to his lower back while assisting a co-worker move a pallet. Defendants, pursuant to a Form 63, accepted this claim.
4. On August 30, 2002, Dr. Jeffrey Knapp, an orthopedic surgeon, evaluated plaintiff for his sudden onset of pain following his work injury. His initial impression was a lumbar strain with radicular symptoms. After conservative treatment, Dr. Knapp released plaintiff to return to work without restrictions on September 13, 2002. *Page 4 
5. On December 6, 2002, plaintiff returned to Dr. Knapp with recurrence of symptoms of back and right leg pain occurring with activity such as bending forward and prolonged standing.
6. An MRI performed on December 26, 2002 showed degenerative disc disease at L4-5 and L5-S1 with disc bulges and a small posterior annular tear at L3-4. After conservative treatment measures failed to provide plaintiff continuing relief, plaintiff underwent a lumbar hemilaminectomy and diskectomy at L3-4 and L4-5 performed by Dr. Knapp on May 22, 2003.
7. Plaintiff underwent post-operative physical therapy and on September 10, 2003, Dr. Knapp released plaintiff to return to work at light duty with a plan to gradually increase him to full-time work.
8. In spite of physical therapy, plaintiff was having increased problems as of November 12, 2003 and he was placed on light duty. A repeat MRI did not show a recurrent disc and the defendant-carrier requested a second opinion with Dr. Joseph Zuhosky on December 18, 2003. Dr. Zuhosky recommended EMG studies, prescription for Neurontin and additional epidural steroid injections. A TENS unit was prescribed for plaintiff. He recommended work restrictions of 4 hours a day with a 5 pound lifting restriction and assumed plaintiff's medical treatment.
9. A functional capacity evaluation was performed on April 21, 2004. On May 13, 2004, Dr. Zuhosky gave plaintiff permanent work restrictions of no squatting, no lifting or carrying over 35 pounds, no bending to lift, no overhead lifting over 25 pounds, position changes as needed, and only occasional bending and stooping. Dr. Zuhosky opined that plaintiff had reached maximum medical improvement and assigned a 10% permanent partial impairment rating to plaintiff's back. *Page 5 
10. Plaintiff returned to work full time as a roller grind operator in May 2004.
11. On November 18, 2004, plaintiff fell out of a tree stand while he was hunting. Plaintiff broke his shoulder, broke several ribs, punctured his pancreas, and suffered a partially deflated lung. Plaintiff was unable to work for two months due to these injuries. He returned to work full time on January 31, 2005. Plaintiff's injuries sustained as a result of the hunting accident did not affect his ability to perform his job.
12. On February 25, 2005, plaintiff first saw Dr. T. Kern Carlton. Plaintiff advised that he had back pain that was constant at 5 to 8 out of a 10 rating. He further complained that his right leg felt weak and numb at all times and activities increased his pain. Dr. Carlton urged him to continue his weight loss efforts and home exercise program, gave him a prescription for Mobic and Lidoderm, and diagnosed plaintiff with chronic pain syndrome.
13. As of May 23, 2005, Dr. Carlton noted that plaintiff had continued to complain of back pain, which radiated down his right leg. Plaintiff indicated that while the medication helped it did not totally relieve his pain. He was continuing to work with the restrictions set by Dr. Zuhosky. Dr. Carlton determined that plaintiff had reached maximum medical improvement and gave plaintiff a 19% permanent partial impairment rating to his back. He made no changes to the restrictions assigned to plaintiff by Dr. Zuhosky.
14. On August 8, 2005, Dr. Robert Blake of Carolina Orthopedic and Sports Medicine Center saw plaintiff for a second opinion. Dr. Blake found that plaintiff had reached maximum medical improvement. He determined that plaintiff had retained a 15% permanent partial impairment rating to his back. He made no changes to the restrictions assigned to plaintiff by Dr. Zuhosky. *Page 6 
15. When plaintiff returned to his position with defendant-employer in May 2004, defendant-employer made certain modifications to plaintiff's work responsibilities to allow plaintiff to continue to perform the roller grind operator position. Plaintiff's supervisor, Carl McAbee, went to plaintiff's co-workers individually, told them of plaintiff's restrictions and requested that they assist plaintiff if he ever needs help. This implies that the assistance requested was more than that normally provided by co-workers pursuant to defendant-employer's team approach. Mr. McAbee testified that he often sees co-workers helping plaintiff with tasks that he would not normally see a co-worker helping another co-worker.
16. Plaintiff testified that he required assistance on many of the essential functions of his job. These included pulling the regulating wheels, pulling or pushing drive rolls off the track line to be installed into the machines, repairing roller pumps which sit on the floor underneath the roller turners, lifting objects from the floor, obtaining pallets once or twice a day and any activity which requires bending, stooping and squatting. These activities occur several times during the day and plaintiff's pain increases with activity as he works during the day. Plaintiff's job varies from day to day and on some days there are four or five occasions when he needs assistance and on other days only one or two occasions. While other employees ask for and receive assistance with the performance of their duties, no other employee receives the same amount of assistance that plaintiff is getting. Without this assistance plaintiff could not perform his job.
17. John P. McGregor, a vocational rehabilitation counselor, performed an analysis of plaintiff's job as it is now being performed. Mr. McGregor concluded plaintiff's position was a real job and acknowledged that other employees have to assist plaintiff in the performance of his *Page 7 
duties but believed that plaintiff received no more assistance than any other employee would receive under defendant-employer's team approach.
18. Mr. J. Adger Brown, Jr., a vocational consultant, acknowledged that the roller grind operator position was a legitimate job and met the definition of regular competitive employment. He opined that plaintiff is performing the job well and doing it to the satisfaction of his employer but there had been several modifications and accommodations allowing plaintiff to accomplish the job. Mr. Brown felt that the accommodations provided by defendant-employer were meant with plaintiff's physical limitations in mind, were tailored to plaintiff's limitations, and were above and beyond the help that employees received from one another pursuant to defendant-employer's team approach.
19. Based upon the greater weight of the competent evidence, the Full Commission finds that, due to his permanent restrictions arising from his compensable back injury, plaintiff requires special assistance and accommodations in order to perform his job duties. The assistance and accommodations provided to plaintiff are above and beyond those provided to other employees pursuant to defendant-employer's team approach. Furthermore, if plaintiff were no longer able to perform his job or was released from defendant-employer's employment for whatever reason, he could not do a job with similar physical demands elsewhere without the accommodations or assistance that defendant-employer is presently offering.
20. Plaintiff has not shown any evidence to the undersigned regarding the issue of disability, and in fact, testified in the hearing before the Deputy Commissioner that he would like to continue working for defendant-employer.
21. Plaintiff has not prosecuted this matter without reasonable grounds.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of employment with defendant. N.C. Gen. Stat. § 97-2 (6).
2. In Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798
(1986), the Supreme Court stated:
 The Workers' Compensation Act does not permit [defendant] to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendant] could terminate at will or, as noted above, for reasons beyond its control. 316 N.C. at 439, 342 S.E.2d at 806.
The test is whether the proffered employment is so modified because of the employee's limitations that is not ordinarily available in the competitive job market. Id. Plaintiff has established that the position offered by defendant-employer and which plaintiff is currently working, has been so modified that it is not ordinarily available in the competitive job market.
3. Disability, within the North Carolina Workers' Compensation Act, means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9). In order to obtain compensation, plaintiff has the burden of proving the existence and extent of his disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). In order to support a conclusion of disability, the Commission must find (1) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment, and (3) that plaintiff's incapacity to earn was caused by his injury. Id. In *Page 9 
the case at hand, as plaintiff has continued to work for defendant-employer earning his pre-injury wages, at a position that has now been determined to be unsuitable, plaintiff has failed to prove disability at this time.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury which may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
5. This matter was brought for good cause and the defendants' request for attorney's fees is denied. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
2. Each party shall pay half the costs.
This the 6th day of November, 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT *Page 10 
COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1